IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

## CEDRIC FRANKLIN v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 00-2094-I      Irvin H. Kilcrease, Jr., Chancellor**

—————————

**No. M2001-00279-COA-R3-CV - Filed November 8, 2001**

—————————

WILLIAM C. KOCH, JR., J., concurring.

This appeal focuses on the type of notice that prisoners charged with disciplinary infractions must receive. While I agree with the results of the majority's opinion, I write separately to emphasize that prisoners are constitutionally entitled to advance written notice of the claimed disciplinary infraction notwithstanding the potential punishment they are facing. In this case, the prisoner received minimally adequate notice.

## I.

In August 1993, Cedric Franklin was indicted for one count of first degree murder, one count of first degree felony murder, and one count of a especially aggravated robbery. In January 1994, he pled guilty to one count of second degree murder and one count of especially aggravated robbery and received concurrent sentences of 35 and 20 years. During the events relevant to this case, Mr. Franklin was incarcerated at the West Tennessee State Penitentiary.

Mr. Franklin and another prisoner, Robert Brown, were operating a tractor outside the prison on April 20, 2000. At some point, they stopped the tractor, and Mr. Brown instructed Mr. Franklin to pick up a black plastic bag containing rocks that was laying on the side of the public road. There is some evidence that the prisoners believed that the bag contained bottles of alcoholic beverages.[1] Messrs. Franklin and Brown continued on their way to the prison's recycling center where they were met by another prisoner, Gary Reeves. At this point, several corrections officers accosted the three prisoners. When the officers asked for the plastic bag, Mr. Franklin stated that he did not know where it was. One of the officers eventually found the bag in another part of the recycling center.

---

[1] A corrections officer had discovered the plastic bag earlier in the day and, upon opening it, had found five plastic bottles filled with liquid that smelled like alcohol. The officer's superior had instructed him to replace the bottles with rocks, to return the bag to the side of the road, and to keep the bag under surveillance.

Mr. Franklin and the other two prisoners were charged with "violation of state law"[2] and were placed in administrative segregation pending a disciplinary hearing. The written disciplinary report provided to Mr. Franklin on April 20, 2000, gave the following recitation of the facts upon which the "violation of state law" disciplinary infraction was based:

> On 04/20/2000 at approx. 7:00 AM I CO [Corrections Officer] Ring was driving down the Chicken House Road when I noticed a black plastic bag lying on the side of the road. Upon investigating I found that the bag contained 4 plastic bottles of clear liquid and 1 bottle of a amber color liquid. When the bottles were opened they had a strong smell of alcohol. I then took the bottles to the sally port and notified Lt. Miller. Lt. Miller took charge of the bottles and had me replace them with rocks and return the bag where I found it. Sgt. K. Boyd was watching the bag and notified via radio that inmate Cedric Franklin #230639 and inmate Robert Brown #153069 were on a tractor pulling a cart and had stopped and inmate Franklin got off and picked up the bag. The tractor proceeded toward the recycle area. When inmate Gary Reeves #217481 came out of the recycle building heading toward the tractor I stopped the tractor and asked inmate Franklin where the bag was. He stated he didn't have it. Sgt. Boyd located the bag by the cardboard area. Inmate then made the statement that inmate Reeves had told him to pick it up. Inmate Franklin, inmate Reeves and inmate Brown are charged with violation of state law and placed in unit 2 pending disciplinary hearing.

At the April 25, 2000 hearing, a three-person disciplinary board heard the testimony of Mr. Franklin, Officer Ring, and Sergeant Boyd and received into evidence pictures of the five bottles that had been discovered in the black plastic bag. Thereafter, the board found Mr. Franklin guilty of "violating state law." As a result of his conviction, Mr. Franklin received ten days in punitive segregation, the loss of his trustee status, and the loss of his prison job. Both the warden and the Commissioner of Correction affirmed the disciplinary board's action.

## II.

More than twenty-five years ago, the United States Supreme Court prescribed the minimum procedural due process rights of prisoners facing prison disciplinary proceedings. The Court stated that prisoners were entitled to (1) written notice of the claimed infraction at least twenty-four hours prior to the disciplinary hearing, (2) a hearing before a sufficiently impartial body, (3) a limited right to call witnesses and present documentary evidence, and (4) a written statement of the fact-finders as to the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418

---

[2] In 1994, the Department of Correction's policy defining disciplinary offenses included a separate offense for "Violation of State Law (VSL)" and defined this offense as "[a]ny violation of T.C.A. not specifically addressed in this policy." Tenn. Dep't of Corr., Policy Index No. 502.05 IV.VVV.

U.S. 539, 563-66, 94 S. Ct. 2963, 2978-79 (1974).[3] These minimum rights exist independent of any further expansion of procedural safeguards that might be made available by statute, regulation, or policy.

The *Wolff v. McDonnell* decision did not prevent prisons and jails from expanding the procedural safeguards in prison disciplinary proceedings or from providing details regarding how the constitutionally required minimum safeguards would be provided. In fact, during the past twenty-five years, prisons in Tennessee and elsewhere have enacted policies and rules defining the procedural steps in a prison disciplinary proceeding.[4] It is not uncommon that these procedures go beyond the minimum procedural due process requirements identified in *Wolff v. McDonnell*. For example, even though the Court had declined to extend to prisoners the right to counsel, the Tennessee Department of Correction permits attorneys to be present at disciplinary proceedings. Tenn. Dep't of Corr., Policy Index No. 502.01 VI.E.2.h.

During the twenty years following the *Wolff v. McDonnell* decision, the state and federal courts were deluged with prisoner lawsuits complaining of due process deprivations for even the most minor departures from prison disciplinary procedures. In 1995, to stem the tide of these sorts of suits, the United States Supreme Court revisited prison disciplinary proceedings to determine whether prisoners had a constitutionally protected liberty interest in the procedures prescribed in the statutes, regulations, or policies governing prison disciplinary proceedings. The Court held that the procedural rights afforded by statutes, regulations, or policies rose to the level of a constitutionally protected liberty interest only when the proceeding has imposed "atypical and significant hardship on the inmate in relation to the ordinary aspects of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).

In the wake of the *Sandin v. Conner* decision, it is important to recognize that the course of a prison disciplinary proceeding is shaped by two legal forces. First, it is shaped by the minimum procedural due process requirements imposed by the federal and state constitutions. These are the procedures recognized in *Wolff v. McDonnell*. Second, it is shaped by the statutes, rules, and procedures dictating how the discipline of prisoners should be carried out. The *Sandin v. Conner* decision addresses the latter, not the former. Accordingly, prisoners facing disciplinary proceedings are entitled to (1) timely written notice prior to the disciplinary hearing, (2) a sufficiently impartial hearing body, (3) a limited right to present evidence, and (4) a written statement of the evidence relied upon and the reasons for the disciplinary action, regardless of whether they are facing punishment that is atypical and significant in relation to the ordinary aspects of prison life.

## III.

Our sole task in this case is to determine whether Mr. Franklin received minimally adequate notice of the disciplinary charges he was facing. Mr. Franklin asserts that he did not because the

---

[3]The Court specifically declined to require that prisoners charged with disciplinary infractions be afforded the right of confrontation and cross-examination and the right to counsel. *Wolff v. McDonald*, 418 U.S. at 567-570, 94 S.Ct. at 2980-82.

[4]*E.g.* Uniform Disciplinary Procedures, Tenn. Dep't of Corr., Policy Index No. 502.01 (Mar. 1, 2001).

written notice he received on April 20, 2000, did not cite the specific state statute that he and his two confederates allegedly violated when they picked up the black plastic bag and carried it to the prison recycling facility.

As the United States Supreme Court noted, the purpose of providing a prisoner with timely written notice of disciplinary charges is to enable him or her to marshal the facts in his or her favor and to prepare a defense. *Wolff v. McDonnell*, 418 U.S. at 564, 94 S. Ct. at 2979. To be constitutionally sufficient, the notice must adequately inform the person to whom the notice is directed of the nature of the proceedings and the nature of the matters to be addressed. Due process requires that the notice must, under all the circumstances, apprise all interested persons of the pending action in order to afford them an opportunity to present their case. *Brown v. Tennessee Dep't of Safety*, No. 01A01-9102-CH-00043, 1992 WL 63444, at \*4 (Tenn. Ct. App. Apr. 1, 1992) (No Tenn. R. App. P. 11 application filed).

At the time of Mr. Franklin's disciplinary hearing, the Department's policies did not require that written disciplinary reports for VSL infractions contain a citation to the statute allegedly violated.[5] By the same token, neither the federal nor the state constitutions require a specific statutory citation, as long as the other facts included in the notice reasonably apprise the prisoner of the conduct deemed to be an infraction of the disciplinary rules. The facts included in the April 20, 2000 disciplinary report plainly put Mr. Franklin on notice that the prison officials believed that he and his two confederates were attempting to obtain contraband when they picked up the black plastic bag from the side of Chicken House Road and carried it back to the recycling facility. For the purposes of procedural due process, it matters little that Mr. Franklin and his confederates were unsuccessful in their efforts. The information in the disciplinary report provided Mr. Franklin with sufficient information to defend himself at the April 25, 2000 disciplinary hearing.

Accordingly, I would find that the April 20, 2000 disciplinary report complied with the written notice requirements of *Wolff v. McDonnell* because it contained sufficient information to enable Mr. Franklin to defend himself. The *Sandin v. Connor* analysis plays no role here because Mr. Franklin has not pointed to any departure from applicable regulations or procedures with regard to the April 20, 2000 report notifying him of the alleged VSL violation.[6]

_____
WILLIAM C. KOCH, JR., JUDGE

---

[5] The Department apparently added this requirement some months after Mr. Franklin's disciplinary hearing when it amended the definition of the VSL offense by adding the following sentence: "The incident report shall cite the state law and TCA code." Tenn. Dep't of Corr., Policy Index No. 502.05 VI.A.73 (Dec. 1, 2000).

[6] Even if *Sandin v. Connor* were applicable, the majority has correctly pointed out that the three punishments meted out to Mr. Franklin for the VSL infraction do not constitute punishment that is atypical and significant in relation to the ordinary aspects of prison life.